ORAL ARGUMENT NOT YET SCHEDULED

# UNITED STATES COURT OF APPEALS
# DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| AMERICAN LUNG ASSOCIATION, *et al.*, <br><br>       *Petitioners*, <br><br> v. <br><br> ENVIRONMENTAL PROTECTION AGENCY, *et al.*, <br><br>       *Respondents*. | No. 19-1140 <br> and consolidated cases |

## EPA'S REPLY IN SUPPORT OF ITS MOTION TO EXPEDITE

Petitioners' opposition briefs[1] offer no meaningful rebuttal to EPA's request for expedition. Petitioners effectively concede that this case is of paramount public interest, and it is beyond dispute that the procedural history underlying the Affordable Clean Energy Rule is unusually lengthy and complex. Given this backdrop, and the

---

[1] Oppositions were filed by the petitioners in case numbers 19-1140, 19-1165, 19-1166, 19-1173, 19-1177, and 19-1188. A response in support was filed by the petitioner in case number 19-1179, North American Coal Company. As noted in EPA's motion to expedite, the fourteen parties who had moved to intervene at the time EPA filed its motion all support expedition, one of whom—Westmoreland Mining Holdings LLC, is now also a petitioner. EPA has since conferred with movant intervenors the States of West Virginia, Alabama, Alaska, Arkansas, Georgia, Indiana, Kansas, Kentucky, Louisiana, Missouri, Montana, Nebraska, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Utah, and Wyoming, Governor Phil Bryant of the State of Mississippi and the Mississippi Public Service Commission, all of whom support EPA's motion to expedite.

fact that Petitioners identify no concrete harm from the briefing schedule EPA proposes, this Court should grant EPA's motion to expedite.

## ARGUMENT

Rather than address EPA's arguments in favor of expediting this matter, Petitioners have, for the most part, elected to attack strawmen. For instance, Petitioners' claim that this case is not distinguishable from other nationally important cases. *See* State Pet. Opp. at 5-6, Doc. Id. No. 1805951, Env. Pet. Opp. at 3-4, Doc. Id. No. 1805732. They entirely overlook the unique and lengthy procedural history already underlying the issues in this case. *See* EPA Mot. at 3-4, Doc. Id. No. 1803976; *see also id.* at 5 (noting that Petitioners had relied on the now twelve-year history underlying EPA's authority to regulate greenhouse gases in arguing that prompt judicial review was necessary).[2] They notably cannot cite another area of Clean Air Act regulation (or any other regulation) that the courts similarly considered so important as to have the Supreme Court intervene to stay the rulemaking pending judicial review after this Court denied it, and then for this Court to *sua sponte* go *en banc* to hear the case in the first instance.

---

[2] By holding the *West Virginia* litigation in abeyance while EPA reassessed the Clean Power Plan, the Court correctly decided not to review a rule that EPA eventually repealed. Moreover, EPA reassessed that major rule from start to finish in slightly more than two years, acting as expeditiously as practicable under the circumstances. EPA Mot. at 3.

Petitioners also downplay the intense public interest in EPA's regulation of greenhouse gas emissions from existing power plants, and the fact that the case bears on the appropriate regulation of a significant sector of the economy.[3] Simply put, while many cases that come before this Court are important, this case reflects a long-pending dispute in an unusually significant regulatory area. *See, e.g., id.* at 4 (noting the numerous categories of entities impacted by the Affordable Clean Energy Rule, including the states, regulated utilities, rate payers nationwide, and others).

Moreover, promptly obtaining regulatory certainty is, in fact, a compelling interest in this case, confirmed by the support for expedition by the movant respondent-intervenors and two petitioners, many of whom are members of the regulated community. *Id.* at 1. Indeed, the Affordable Clean Energy Rule explained that the CAA section 111(d) state plan process has its "own complexities and realities that take time to address," such as evaluating "source-specific considerations." 84 Fed. Reg. 32,567-68 (noting that, in the SIP context, states often need and take much, or all of, the three-year period to develop plans). Put differently, the reason EPA granted states until 2022 to submit their plans in response to the Affordable Clean Energy Rule, *see* Env. Pet. Opp. at 3 & n.1, State Opp. at 6-7, is that EPA found that states need this time in light of the inquiry they are required to conduct. Delaying resolution of this matter would leave state authorities—and, by extension, the

---

[3] Since EPA filed its motion, as Petitioners note, additional parties have filed petitions for review and more parties have sought to intervene in support of EPA.

regulated community—in a state of uncertainty as to how to proceed for a large portion of this period. It would further hinder state authorities' ability to prepare such plans. This case meets both the statutory standard for granting expedition and this Court's practices in doing so.

Petitioners also cannot backpedal from their own past requests in the Clean Power Plan litigation for the Court to move expeditiously. *See* State Pet. Opp. at 7-8; Env. Pet. Opp. at 4. It is irrelevant that the Affordable Clean Energy Rule has not been stayed—Petitioners are seeking to overturn that rule and require that EPA take a different approach. Prompt disposition of the case would appear to serve that interest, and Petitioners offer no argument to the contrary. In fact, Petitioners continue to allege that this case involves "addressing climate change harms [that are] critical and urgent problem[s]." State Pet Opp. at 6; *see also* Env. Pet. Opp. at 4.

Nor are Petitioners prejudiced by EPA's proposed schedule. *See*, *e.g.*, State Pet. Opp. at 10; Env. Pet. Opp. at 4-5. Petitioners have no answer to the fact that, by providing 52 days for each side's principal briefs, the schedule EPA proposes is *longer* than the 30 days provided by the Court's local rules, and close to the 60 days typically afforded in petitions to review EPA's rules. Indeed, it is more generous than the briefing schedule provided in the Clean Power Plan litigation, in which the Court granted expedited consideration. *See* Order, *West Virginia v. EPA*, 15-1363, Doc. No. 1594951 (D.C. Cir. Jan. 21, 2016). There, the Court ordered Petitioners' 42,000-word briefs to be submitted on February 19, 2016—a mere 29 days after the Court granted

expedited consideration. Order, *West Virginia*, Doc. No. 1595922 (D.C. Cir. Jan. 28, 2016). EPA's response brief was due just 38 days later on March 28, 2016. *Id.*

Petitioners argue that the Affordable Clean Energy Rule reflects three separate rulemakings. This is not a meaningful measure of the complexity of this case. Particularly given that the Clean Power Plan, 80 Fed. Reg. 64,661, was more than four times longer than the Affordable Clean Energy Rule, 84 Fed. Reg. 32,520, one would expect the briefs in this case to be shorter than in the Clean Power Plan litigation. One of those three rulemakings—the repeal of the Clean Power Plan—involves only a pure legal issue of statutory construction. The certified index to the record in the Clean Power Plan litigation was likewise far longer than the index here. Certified Index of Record, *West Virginia*, 15-1363, Doc. No. 1589852 (D.C. Cir. Dec. 21, 2015). There is no reason to doubt that briefing here, addressing a shorter rule with a smaller record, can be accomplished in the longer period that EPA proposes.[4]

Petitioners' other arguments seeking to delay this case are, likewise, hollow. Petitioners offer only bare speculation that they may file some unspecified motion concerning the completeness of the record. But even if they believe they have the basis for such a motion, EPA's proposed schedule presents no barrier to them filing such a motion in a "rational and orderly way," Env. Pet. Opp. at 5-6. Petitioners have

---

[4] Petitioners also suggest that some petitioners may "challenge EPA's authority and obligation to regulate in this area at all." Env. Pet. Opp. at 8. Such challenges, however, have already been extensively briefed in the context of the Clean Power Plan litigation, and are thus unlikely to significantly add to the complexity of this case.

ample time to file such a motion, and EPA is not proposing to cut off their ability to do so.

The administrative petitions seeking reconsideration by EPA also do not justify slow-walking this litigation. The petitions will be resolved in due course, and such administrative actions may be challenged separately, if appropriate. 42 U.S.C. § 7607(d)(7)(B). The subtext of Petitioners' suggestion that they may seek "coordination of the agency's reconsideration process with briefing in this litigation," State Opp. at 9-10, is that—even though no party disputes that there is a live, urgent controversy in this case—Petitioners might seek to delay resolution of this case for an undefined period of time. Petitioners do not even attempt to suggest a legal basis for their hypothetical motion, relying instead on the mere possibility that they might file something at some unspecified later date and on unspecified grounds. The Court should reject these arguments as a basis for denying expedition here, particularly given that it did not slow down the Clean Power Plan litigation despite administrative petitions requesting reconsideration of that rule. *See, e.g.*, Petition for Review, *North Dakota v. EPA*, 17-1014, Doc. No. 1657265 (D.C. Cir. Jan. 17, 2017).

EPA's motion is also not premature.[5] All of the petitioners in this case are now known because the jurisdictional deadline to file petitions for review was September 6,

---

[5] Petitioners' argument tries to put EPA in a catch-22. If EPA had waited to file its motion, Petitioners would no doubt argue that EPA had not treated the case as requiring expeditious resolution. Moreover, waiting to file could render EPA's

*Cont.*

2019. As a result, all of the petitions challenging the Affordable Clean Energy Rule were filed before the response date to EPA's motion to expedite, and all of the petitioners had an opportunity to respond.⁶ And notwithstanding Petitioners' argument, *see* State Pet. Opp. at 10, the parties in multiparty petitions often do not know the length of the briefs they will be afforded when they propose a schedule—particularly if there is a dispute on these points—because the Court typically resolves both of those issues in one order. Regardless, if Petitioners want to achieve greater certainty on brief lengths, EPA is happy to begin those discussions. EPA's schedule also builds in sufficient time to resolve any issues with intervenors as to appropriate brief length and number of briefs.

Finally, Petitioners' argument that EPA did not meaningfully consult with them on its motion, Env. Pet. Opp. at 1, 4, 7, 8; State Pet. Opp. at 1, is not grounded in fact. EPA filed the certified index of record on August 23, 2019, and immediately

---

proposed schedule infeasible and undermine the Court's ability to schedule the case for argument in spring of 2020, thus defeating the relief EPA is asking the Court to order.

⁶ Notably, many of the petitioners who had not yet filed their case at the time EPA filed its motion to expedite joined in the oppositions filed by other petitioners. Moreover, any of the petitioners who filed their case at the end of the jurisdictional period to do so and who wished to be heard on EPA's motion to expedite could have simply filed a motion for leave to file a response, even if their petition was not yet not formally consolidated with this one. In addition, a group of power company petitioners filed a response on September 10, 2019. *See* Power Pet. Opp., Doc. Id. No. 1805951. EPA does not object to the Court considering this filing. The petitioners in case number 19-1175 have also informed EPA that they oppose EPA's motion to expedite.

notified all parties involved in the case at that time of its proposed motion and schedule. As befitting a motion to expedite, EPA requested that the parties provide their position by the end of the next business day, but also explained that it was willing to consider modifications to the proposed schedule and offered to convene a call in the coming days. EPA did not file its motion until August 28, several days after its request for parties' positions. This afforded Petitioners ample time to raise their concerns with EPA. They declined to do so.

## CONCLUSION

EPA respectfully requests that the Court enter the schedule set forth in its motion to expedite, and that, following the completion of briefing, this case be scheduled for oral argument in April of 2020.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Assistant Attorney General

JONATHAN D. BRIGHTBILL
Principal Deputy Assistant Attorney General

Dated: September 16, 2019

/s/ Benjamin Carlisle
BENJAMIN CARLISLE
MEGHAN GREENFIELD
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 514-9771
Email: benjamin.carlisle@usdoj.gov

*Counsel for Respondent Environmental Protection Agency and Andrew Wheeler, Administrator*

*OF COUNSEL*
Matthew Z. Leopold
Justin Schwab
Matthew C. Marks
Abirami Vijayan
Scott J. Jordan

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d), I hereby certify that the foregoing complies with the type-volume limitation because it contains 2,013 words, according to the count of Microsoft Word.

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(c), that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter, who are registered with the Court's CM/ECF system.

/s/ Benjamin Carlisle
Benjamin Carlisle
